IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATORSHIKA NEVILS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 7496 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| NORTHEAST ILLINOIS REGIONAL ) | |
| COMMUTER RAILROAD CORPORATION ) | |
| d/b/a METRA, an Illinois municipal corporation, ) | |
| and Metra Police Officer LYNDELL LUSTER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Latorshika Nevils, brought this § 1983 action for unreasonable seizure and malicious prosecution against the Northeast Illinois Regional Commuter Railroad Corporation ("Metra") and Metra police officer Lyndell Luster. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons explained below, defendants' motions are denied.

**MATERIAL FACTS[1]**

Metra, an Illinois municipal corporation created under the Regional Transportation Authority Act, 70 ILCS 3615/1.01 *et seq.*, operates commuter passenger trains in Northeast

---

[1]Luster filed a response to plaintiff's Local Rule 56.1(b)(3)(C) statement, but none of his denials are properly controverted with specific references to the record, as required by the local rule. Metra indicates in its reply that it "adopts as its own" Luster's response. (ECF No. 58, Metra's Reply.) Therefore, the Court deems defendants to have admitted all properly-supported material facts in plaintiff's Local Rule 56.1(b)(3)(C) statement. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (when a responding party's statement fails to dispute the facts set forth in the opposing party's statement in the manner dictated by the local rule, those facts are deemed admitted for purposes of the motion).

Illinois. Nevils lives in Indiana and commutes to work in Chicago via the South Shore Line train. Her claims stem from a November 22, 2014 incident at Metra's Van Buren Street train station in Chicago. The parties have submitted video recordings of the events on the train platform. One video was taken by a camera that faced south on the platform, and the other by a camera that faced north.[2]

The video recordings show that Nevils was standing on the platform waiting to board a South Shore Line train. Luster was standing on the platform several feet to the south of Nevils. There were a few other people on the platform, but none immediately near Luster and Nevils. The platform surface has a yellow line a short distance from its edge nearest the train tracks. For safety reasons, those who use the platform are requested to stand behind the yellow line. Luster refers to the strip of platform between the yellow line and the platform's edge as the "safety zone."[3] Nevils was standing very close to, or possibly slightly on, the yellow line before the train approached. As the train approached from the north and the first train car or two passed Nevils, she turned and began walking south on the platform parallel to the train, within the safety zone and at one point between the train and Luster. As Nevils passed him, Luster stepped back as if to give her more room. After several seconds, Nevils crossed back over the yellow line outside of the safety zone. Luster then walked toward Nevils, and the two briefly exchanged words while Luster made several rapid hand gestures. The train came to a stop, Luster pointed at the open doors, and Nevils boarded the train. Several seconds later, after Luster had walked a

---

[2] The south-facing camera had a better view of the beginning of the incident, and the north-facing camera had a better view of its conclusion. The quality of a portion of the video footage taken by the north-facing camera is poorer, due to the bright headlight of the oncoming train.

[3] Defendants do not contend that it is a violation of any law to stand in the safety zone.

number of steps north on the platform, an individual leaned out of the train vestibule and, presumably, said something to Luster, because Luster turned toward the doorway, pointed, and said something. After a brief pause, he gave a hand signal and boarded the train. About a minute later, Luster escorted a handcuffed Nevils off the train.

The video recordings do not include audio, nor are they of optimal quality, so they do not tell the entire story. Luster says that while they were on the platform and before the train approached, he "asked [Nevils] nicely to step out of the safety zone" several times, and he asked her again as the train was pulling into the station and she walked past him. (ECF No. 41-2, Dep. of Lyndell Luster at 29-39.) According to Luster, Nevils was not "even close to compliance" with his instructions because another five or six seconds elapsed before she walked back out of the safety zone. (*Id.* at 29.) While Nevils was still in the safety zone, says Luster, she told him that she been taking the train for years and knew what she was doing. When she stepped out of the safety zone, she turned around and gave him "back talk," asking him, "Where were you at when the tires of my car were being stolen?" (*Id.* at 29-30, 38-39.) He told her to "go ahead and get on the train, it's done, it's over with." (*Id.* at 31.) He allowed her to board the train, he says, even though he believed she had committed a crime. Nevils, however, "kept the event going" by "enter[ing] the train complaining" loudly. (*Id.*) Luster was still on the platform, but he saw her walking into the train car, "still yelling, talking loud the whole way." (*Id.* at 41.) Luster gave the train conductors a hand signal to hold the train so he could board; he did not intend to arrest Nevils, but merely "to get her to just sit down." (*Id.* at 48.) He entered the car where Nevils was standing in the aisle. She was "still complaining about [Luster] and her interaction with [him]." (*Id.* at 45.) Because she "chose to stand up in the aisle and keep going at it with [Luster]," he decided to arrest her after a minute or so. (*Id.* at 48.) Nevils did not resist arrest. Luster

3

handcuffed her and escorted her off the train. He took her to the Metra police office inside the station, where he and another police officer prepared a police report and a misdemeanor criminal complaint charging Nevils with reckless conduct. Luster then transported Nevils to the First District Chicago police station, where the paperwork was processed and Nevils was placed in a cell in the temporary detention facility.

Nevils's account differs somewhat. She says that as the train approached and slowed, she walked south on the platform to get closer to the door of a train car that had available seats. She concedes that she crossed the yellow line and walked within it for a few seconds. As she was walking, she realized that someone was yelling, "Hey you, get behind the yellow line." (ECF No. 41-1, Dep. of Latorshika Nevils at 19.) She did not think she was in close proximity to the train and did not realize that the individual was talking to her until she heard the directive again. Then she stepped over to make sure that she was behind the yellow line. Nevils turned to look back and saw Luster approaching her "very quickly." (*Id.* at 23.) He yelled at her and said something to the effect of when he told her to do something, she should make sure she does it or else he could have her arrested and thrown in jail. (*Id.*) Luster was standing nearly "over [her]," and she had her hands up, palms out and close to her body, to indicate that he was standing too close. (*Id.* at 24-25.) She told him, "I don't need this right now. Tomorrow is my birthday. I just want to go home." (*Id.* at 25.) Luster responded that he was going to let her go so that she could go home, "as if [she were] lucky that he was giving [her] a privilege to go home." (*Id.* at 26.) Nevils then boarded the train. As she took a few steps into the train car to look for an available seat, she was thinking about how "aggressive" Luster had been. (*Id.* at 27.) She "felt the need to speak a thought" to Luster, so she returned to the vestibule and said, "Where were you guys when four wheels were stolen off of my car?" (*Id.* at 28.) Then she returned to the

4

seating area and sat down. Before long, Luster was standing over her and yelled, "Hey, I told you to get [] on the train and sit down and shut your mouth or I would have you arrested. I want you to sit in your seat and shut up." (*Id.* at 31-32.) She was stunned, and told the conductor who was present that all the years that she had ridden the train, she had never experienced anything like this before. (*Id.* at 32, 34.) According to Nevils, she did not yell or talk loudly during any of these exchanges. After she made the statement to the conductor, Luster continued to yell at her and then said, "That's it, you're going to jail." (*Id.* at 36.) He told her to stand up and turn around. She complied, and he handcuffed her and led her off the train. When they were at the Metra police office in the station, she asked him why he had arrested her, and he stated that she should have kept her mouth shut. After she was taken to the Chicago police station, she spent about four hours in custody there.

> The case report that Luster prepared states in pertinent part:
>
> Offender walked passed [sic] R/O[4] on the safety area of the platform, near the edge. R/O at this time advised offender that she was in safety zone, beyond the yellow safety line and that she had to walk on the other side of it, not next to the train. Offender disregarded R/O and began to tell R/O that she had been taking the train for years and that she knows what she is doing. Offender further related to R/O that she was doing nothing wrong, and that where was the Metra police when her car tires were being stolen. R/O advised the offender to get on the train so that she can go home[.] Offender began speaking very loudly onboard the train, disrupting the train. R/O at this time entered the train and placed the offender in custody.

(Luster Dep., Ex. 1 at 2.) The misdemeanor complaint that Luster prepared and signed states that Nevils committed the offense of reckless conduct "in that [she] endan[g]ered the bodily safety of Metra/RTA/South Shore Commuters. Offender walked alongside the train as it entered the Metra VanBuren Station Platform One (1). This act could have caused injury to Defendant

---

[4] R/O means "reporting officer."

or other passengers. This act displayed a disregard for safety, after R/O advised Defendant to stand/walk behind the yellow safety line, Defendant refused to comply." (Luster Dep., Ex. 3.) At his deposition, Luster stated that he believed Nevils's conduct of "being in the safety zone for 5 to 6 seconds" was reckless because "all it takes is a second, a split second for something on the train to grab you, and you're barreling down the platform," and "if she would have got hit, [he] would have become part of the event because [he] was south of her before she walked past [him]." (Luster Dep. at 32.) Luster was asked whether Nevils "endanger[ed] anybody else's safety" besides his and her own, and he replied, "No." (Luster Dep. at 37.)

Nevils's criminal case was called for a bench trial in the Circuit Court of Cook County on March 12, 2015. (ECF No. 53-4, Tr. of Proceedings.) After one prosecutor noted that there was a videotape of the incident, the other prosecutor informed the judge that the state was unable to meet its burden and therefore moved to "SOL" (strike off with leave to reinstate) the charges against plaintiff. (*Id.* at 3.) The court stated: "Motion State SOL. Defendant is demanding trial." (*Id.*) Under Illinois law, because Nevils made a demand for trial, the state's ability to reinstate the charges eventually expired.

## DISCUSSION

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.

6

*Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). When the nonmovant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the nonmovant's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski*, 712 F.3d at 1168 (quoting *Celotex*, 477 U.S. at 322).

**B.     Probable Cause**

Defendants raise a single argument in their motions. They maintain that they are entitled to summary judgment on plaintiff's claims for unreasonable seizure and malicious prosecution because Luster had probable cause to arrest plaintiff for reckless conduct. To prevail on her § 1983 claim, plaintiff must show that there was no probable cause for her arrest. *See Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016). To prove the tort of malicious prosecution under Illinois law, plaintiff must show the following elements: "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citing *Sang Ken Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006)). "The failure to establish any one element bars recovery." *Id.*

"An officer has probable cause to arrest if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita*, 830 F.3d at 497 (internal quotation marks, ellipsis, and citation omitted). "That determination depends on the elements of the

7

underlying criminal offense." *Id.* "[P]robable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013).

Nevils was arrested for violating the Illinois reckless-conduct statute, which provides that a person "commits reckless conduct when he or she, by any means lawful or unlawful, recklessly performs an act or acts that: (1) cause bodily harm to or endanger the safety of another person; or (2) cause great bodily harm or permanent disability or disfigurement to another person." 720 ILCS 5/12-5(a). "In a prosecution for reckless conduct, the State must prove that defendant's conduct shows a conscious disregard of a substantial risk likely to cause bodily harm such that a reasonable person would have acted differently in the same situation." *People v. Ford*, 49 N.E.3d 954, 958 (Ill. App. Ct. 2016).

Luster contends that he had probable cause to arrest Nevils for reckless conduct because her act of walking in the safety zone between him and the train created the risk of her "being grabbed by the train and pulled into Officer Luster," thereby endangering his safety. (ECF No. 46, Luster's Mem. Supp. Mot. Summ. J. at 4.) Similarly, Metra argues that Luster had probable cause to arrest Nevils for reckless conduct because "it was reasonable for [Luster] to assume that Plaintiff was intentionally not complying with his instructions and instead continuing to walk dangerously close to the train," and "if [Nevils] had been struck by the train it is reasonable to assume that the momentum of the blow could have propelled her into [Luster], possibly causing him significant injury." (ECF No. 40, Metra's Mem. Supp. Mot. Summ J. at 4.) Although an arrest can be supported by probable cause that the arrestee committed any crime, regardless of

8

the officer's belief as to which crime was at issue, defendants do not assert that there was probable cause to arrest Nevils for any other crime.

Defendants' arguments overlook the summary judgment standard. Neither defendant discusses in its opening brief the fact that the mental state of recklessness requires a showing of a conscious disregard of a substantial risk likely to cause bodily harm. Luster repeatedly relies on his testimony that Nevils "ignored" his instruction to step out of the safety zone, while he characterizes Nevils's account of the events (in which she did not ignore him, but rather did not realize he was speaking to her until he gave a second instruction, and she then stepped out of the safety zone) as "self-serving" and "disingenuous." (ECF No. 56, Luster's Reply at 3-4.) Luster's arguments miss the mark for several reasons. The Court must construe the testimony of Nevils, the nonmovant, in the light most favorable to her, *Kvapil*, 752 F.3d at 712; the term "self-serving" "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment," *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013); and courts do not resolve issues of credibility on summary judgment, *Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013).

Luster cites a number of decisions that are not on point because they involved police officers relying on information provided to them by a third party to establish probable cause. Luster also cites *Abbott*, 705 F.3d at 714, for the proposition that where the underlying facts are undisputed, the court can determine on summary judgment whether an arrest was supported by probable cause. That is true, but the Court of Appeals has also stated that the probable-cause determination "must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (internal quotation marks and citation omitted) Here, the totality of the

circumstances, including the video recordings of the incident at issue and the parties' testimony, allows for different interpretations of whether a reasonable person in Luster's position would have been warranted in believing that Nevils had committed the crime of reckless conduct. Therefore, this case must be submitted to a jury.

## CONCLUSION

Defendants' motions for summary judgment [39, 42] are denied. A status hearing is set for August 15, 2017 at 9:30 a.m. to discuss the next steps in the case. The Clerk is directed to correct the defendant's name in the case caption to "Northeast Illlinois Regional Commuter Railroad Corporation d/b/a Metra, an Illinois municipal corporation."

**SO ORDERED.**               **ENTERED:   August 3, 2017**

————————————————
**JORGE L. ALONSO**
**United States District Judge**